CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA AGUILAR, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHURCH & DWIGHT CO., INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

<u>**INTRODUCTION**</u>

1.      Plaintiff Claudia Aguilar ("Plaintiff") on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby brings this action against Defendant Church & Dwight Co., Inc. ("Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

2.      This is a California consumer class action for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and for breach of express warranty.

3.      Defendant manufactures, distributes, advertises, markets, and sells the L'il Critters Gummy Supplements.[1] The labels for the Products prominently display on the side of the label, the claim that these Products contain "**No Artificial Flavors**." This statement is false. The Products are made with DL-malic acid— an artificial flavoring ingredient used in food and beverage products.

4.      Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium product that is free from artificial flavors.

5.      Plaintiff, who purchased the Products in California, was deceived by Defendant's unlawful conduct and brings this action on her own behalf and on behalf of California consumers to remedy Defendant's unlawful acts.

<u>**JURISDICTION AND VENUE**</u>

6.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100

---

[1] The Products include all L'il Critters Gummy Supplements labeled as containing "No Artificial Flavors" that contain malic acid as an ingredient (collectively "the Products").

members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

7.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this judicial district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

8.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiff purchased one of the Products within this District.

**PARTIES**

9.    Defendant Church & Dwight Co., Inc. is a Delaware corporation that maintains its principal place of business in Ewing, New Jersey. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products.

CROSNER LEGAL, P.C.

10.    Plaintiff Claudia Aguilar is a resident of California who purchased one of the Products in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims as set forth below.

### FACTUAL ALLEGATIONS

### DEFENDANT FALSELY CLAIMS THAT THE PRODUCTS CONTAIN
### "NO ARTIFICIAL FLAVORS"

11.    The labels for each of the Products state that the Products contain "No Artificial Flavors" thereby misleading reasonable consumers into believing that the Products are free from artificial flavoring ingredients. However, each of the Products contain an artificial flavoring ingredient called DL-malic acid. For example, a label for one of the Products is shown below.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.





4

**THE PRODUCTS CONTAIN ARTIFICIAL DL-MALIC ACID**

12.    Malic acid is a dicarboxylic acid that is commonly used in food and beverage products. Malic acid has two stereoisomeric forms. L-malic acid occurs naturally in various foods. 21 CFR § 184.1069(a). However, "Racemic DL-malic acid does not occur naturally. It is made commercially by hydration of fumaric acid or maleic acid." *Id*. "The primary commercial production of malic acid is currently based on petrochemical routes, such as the hydration of maleic anhydride generated from the oxidation of benzene or butane at high temperature and high pressure, yielding a racemic mixture of D- and L-malic acid."[2]

13.    Defendant uses synthetic DL-malic acid in the Products. On March 26, 2024, a reputable independent food laboratory tested one of the Products for the presence of DL-malic acid. The Product tested positive for both the D- and L-isomers of malic acid indicating that Defendant uses synthetic DL- malic acid in the Products.[3]

**DL-MALIC ACID IS AN ARTIFICIAL FLAVORING INGREDIENT IN THE PRODUCTS**

14.    The Food and Drug Administration ("FDA") defines an artificial flavor as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 CFR § 101.22(a)(1). DL-malic acid meets the definition of an artificial flavor because its function is to impart flavor in the Products and it is not derived from a natural source like a spice, fruit,

---

[2] Zhen Wei, et al., *Microbial Biosynthesis of L-Malic Acid and Related Metabolic Engineering Strategies: Advances and Prospects,* FRONT. BIOENG. BIOTECHNOL. (Sept.        29,        2021),        available        at https://www.frontiersin.org/articles/10.3389/fbioe.2021.765685/full

[3] *See* **Exhibit A** attached hereto.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

or vegetable. Because malic acid is an artificial flavoring ingredient, Defendant's "No Artificial Flavors" labeling statement is false and misleading.

15.    FDA regulations recognize that malic acid is used as an artificial "flavoring agent" in food and beverage products. 21 CFR § 184.106(c). The Flavoring Extract Manufacturer's Association also recognizes that malic acid is a flavoring ingredient.[4] Indeed, the "main use" of acidulants like malic acid "is to provide and enhance flavor of foods and beverages."[5]

16.    Malic acid has a distinct flavor profile and it provides a sour taste when added to food and beverage products.[6] This flavor profile has been described as "mellow, smooth, persistent sourness reminiscent of fruit."[7] For this reason, malic acid is often used in beverage products to simulate the flavor of apple juice as well as other fruit juices.[8] Acidulants like citric acid, malic acid, and tartaric acid "are responsible for the authentic taste and flavor" of certain fruits.[9]

---

[4] Richard L. Hall, et al., *Progress in the Consideration of Flavoring Ingredients Under the Food Additives Amendments*, J. OF THE INST. OF FOOD TECHNOLOGIES, *available at* https://www.femaflavor.org/sites/default/files/3.%20GRAS%20Substances%282 001-3124%29_0.pdf

[5] E. Ramos Da Conceicao Neta et al., *The Chemistry and Physiology of Sour Taste—A Review,* J. OF FOOD SCIENCE (Mar. 12, 2007), *available at* https://ift.onlinelibrary.wiley.com/doi/full/10.1111/j.1750-3841.2007.00282.x

[6] P. Hartwig, et al., *Flavor Characteristics of Lactic, Malic, Citric, and Acetic Acids at Various pH Levels,* J. OF FOOD SCIENCE (March 1995), *abstract available at* https://ift.onlinelibrary.wiley.com/doi/abs/10.1111/j.1365-2621.1995.tb05678.x

[7] *Self-Teaching Guide for Food Acidulants,* BARTEK.

[8] M.Y. CoSeteng, *Influence of Titratable Acidity and pH on Intensity of Sourness of Citric, Malic, Tartaric, Lactic and Acetic Acids Solutions and on the Overall Acceptability of Imitation Apple Juice,* CANADIAN INST. OF FOOD SCI. AND TECH. J.    (Feb.    1989),    *abstract    available    at* https://www.sciencedirect.com/science/article/abs/pii/S031554638970300X

[9] *Acidulants- Technical Bulletin,* BRENNTAG FOODS, *available at* https://www.brenntag.com/media/documents/denmark/technical_bulletin_acidula nts.pdf

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

17.    Malic acid functions as a flavoring ingredient in the Products regardless of whether Defendant intended to use malic acid as a flavoring ingredient. This is because malic acid imparts a flavor that is reminiscent of fruit when used in the Products. Defendant's Products— which depict ripe fresh fruit on the labels— utilize malic acid to impart flavor.

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE "NO ARTIFICIAL FLAVORS" LABELING STATEMENT AND SUFFERED ECONOMIC INJURY**

18.    Consumers, like Plaintiff, relied on Defendant's "No Artificial Flavors" labeling statement. The "No Artificial Flavors" statement on the labels of the Products is material to reasonable consumers. "Consumer desire for naturally flavored products is an emerging trend and one that may have staying power" according to Paul Manning, chairman, chief executive officer and president of Sensient Technologies.[10] Consumers perceive products that are naturally flavored to be healthier.[11] According to Forbes, 88% of consumers are willing to pay more for healthier foods.[12] "A 2014 study from the marketing research firm Nielsen showed that more than 60 percent of Americans said the

---

[10] K. Nunes, *Using natural ingredients to create authentic, fresh flavors*, FOOD BUS. NEWS (Sept. 20, 2018), *available at* https://www.foodbusinessnews.net/articles/12478-using-natural-ingredients-to-create-authentic-fresh-flavors

[11] L. Dornblaser, *Colors and flavors help drive consumer trend of health,* FOOD AND BEVERAGE INSIDER (Sept. 20, 2022), *available at* https://www.foodbeverageinsider.com/colors-flavors/colors-and-flavors-help-drive-consumer-trend-of-health

[12] N. Gagliardi, *Consumers Want Healthy Foods--And Will Pay More For Them*, FORBES (Feb. 18, 2015), *available at* https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/?sh=769abecb75c5

CLASS ACTION COMPLAINT

absence of artificial colors or flavors is important to their food purchase decisions."[13]

19.    Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain an artificial flavoring ingredient.

**PLAINTIFF'S PURCHASE OF THE PRODUCTS**

20.    Plaintiff Claudia Aguilar purchased one of the Products during the class period from a retail store located in California.

21.    Plaintiff saw and relied on the "No Artificial Flavors" claim on the labels of the Products.  Plaintiff would not have purchased the Products, or would have paid less for the Products, had she known that the products actually contain an artificial flavoring ingredient. As a result, Plaintiff suffered injury in fact when she spent money to purchase the Products she would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff desires to purchase the Products again if the labels of the products were accurate and if the products actually contained "No Artificial Flavors." However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

---

[13] C. Doering, *Demand for natural foods is changing iconic products*, DES MOINES REGISTER (April 5, 2015), *available at* https://www.desmoinesregister.com/story/money/agriculture/2015/04/05/demand-natural-food-ingredients-easter-candy-confection-iconic-brands/25335383/

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

**NO ADEQUATE REMEDY AT LAW**

22.    Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

23.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. The UCL also includes an "unlawful prong." This is important here because Plaintiff alleges that Defendant failed to comply with federal state regulations (see below in "Second Claim for Relief" section) regarding the labeling of "artificially flavored" foods. Thus, Plaintiff's unlawful-prong UCL claim is different than the CLRA in that it provides a different type of allegation and provides a different type of relief than other claims. There is not adequate remedy at law for Plaintiff's unlawful prong UCL claim. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

24.    A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products as containing "No Artificial Flavors" when the Products actually contain the artificial flavoring ingredient DL-malic acid. Injunctive relief is necessary to prevent Defendant from

9

CROSNER LEGAL, P.C.

continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Products actually contain an artificial flavoring ingredient. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

25.    It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be

presented prior to the trial of any equitable claims for relief and/or the entry of an

order granting equitable relief.

**CLASS ACTION ALLEGATIONS**

26.    Plaintiff brings this action as a class action pursuant to Federal Rules

of Civil Procedure 23(b)(3) and 23(b)(2) on behalf of the following Class:

> All persons who purchased the Products for personal use in California
> within the applicable statute of limitations until the date class notice is
> disseminated.

27.    Excluded from the class are: (i) Defendant and its officers, directors,

and employees; (ii) any person who files a valid and timely request for exclusion;

(iii) judicial officers and their immediate family members and associated court

staff assigned to the case; (iv) individuals who received a full refund of the

Products from Defendant.

28.    Plaintiff reserves the right to amend or otherwise alter the class

definition presented to the Court at the appropriate time, or to propose or eliminate

subclasses, in response to facts learned through discovery, legal arguments

advanced by Defendant, or otherwise.

29.    The Class is appropriate for certification because Plaintiff can prove

the elements of the claims on a classwide basis using the same evidence as would

be used to prove those elements in individual actions alleging the same claims.

30.    Numerosity: Class Members are so numerous that joinder of all

members is impracticable. Plaintiff believes that there are thousands of consumers

who are Class Members described above who have been damaged by Defendant's

deceptive and misleading practices.

31.    Commonality: There is a well-defined community of interest in the

common questions of law and fact affecting all Class Members. The questions of

law and fact common to the Class Members which predominate over any questions

which may affect individual Class Members include, but are not limited to:

CROSNER LEGAL, P.C.

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.    Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.    Whether Plaintiff and the Class are entitled to injunctive relief;

e.    Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

32.    <u>Typicality</u>: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

33.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

CLASS ACTION COMPLAINT

34.     The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.     The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.     The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.     When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.     This class action will assure uniformity of decisions among Class Members;

g.     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

35.     Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

36.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

37.    Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

### FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act

### Cal. Civ. Code § 1750 *et seq.*

38.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

39.    Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

40.    At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

41.    At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

42.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

43.    The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

44.     Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain "No Artificial Flavors." Defendant failed to disclose that the Products contain an artificial flavoring ingredient called DL-malic acid. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain an artificial flavoring ingredient to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a)     Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b)     Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c)     Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)     Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

45.     Defendant violated the CLRA because the  Products were prominently advertised as containing "No Artificial Flavors" but, in reality, the Products contain an artificial flavoring ingredient called DL-malic acid. Defendant knew or should have known that consumers would want to know that the Products contain an artificial flavoring ingredient.

46.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

CROSNER LEGAL, P.C.

47.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

48.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

49.    Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above. More than 30 days have passed since Defendant's receipt of Plaintiff's CLRA letter. Accordingly, Plaintiff seeks damages, punitive damages, injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

50.    Pursuant to section 1780(d) of the CLRA, attached hereto is an affidavit showing that this action was commenced in a proper forum.

**SECOND CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

51.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

52.    Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

53.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

54.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising

CROSNER LEGAL, P.C.

Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, 21 CFR § 101.22(i)(1)(iii), California Health & Saf. Code § 110100, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

55.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain an artificial flavoring ingredient) of which they had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

56.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing that the Products are actually naturally flavored.

57.    Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the

CROSNER LEGAL, P.C.

Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

58.    Defendant's wrongful business practices and violations of the UCL are ongoing.

59.    Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

60.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### THIRD CLAIM FOR RELIEF
### Breach of Express Warranty

61.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

62.    Plaintiff brings this claim for breach of express warranty individually and on behalf of the Class against Defendant.

63.    As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products contain "No Artificial Flavors."

CROSNER LEGAL, P.C.

64.     Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representation that the Products contain "No Artificial Flavors."

65.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

66.     In fact, the Products do not conform to Defendant's representations because the Products contain an artificial flavoring ingredient called DL-malic acid. By falsely representing the Products in this way, Defendant breached express warranties.

67.     Plaintiff relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

68.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

CROSNER LEGAL, P.C.

b.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.    Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.    Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: June 13, 2024                    CROSNER LEGAL, P.C.

                                        By:    /s/ *Michael T. Houchin*
                                               MICHAEL T. HOUCHIN

                                        9440 Santa Monica Blvd. Suite 301
                                        Beverly Hills, CA 90210
                                        Tel: (866) 276-7637
                                        Fax: (310) 510-6429
                                        mhouchin@crosnerlegal.com

                                        *Attorneys for Plaintiff and the Proposed
                                        Class*

CROSNER LEGAL, P.C.

### Affidavit Pursuant to Civil Code Section 1780(d)

I, MICHAEL T. HOUCHIN, declare as follows:

1.    I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2.    This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3.    Defendant Church & Dwight Co., Inc. has done, and is doing, business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of the Products within the State of California. Plaintiff alleges that she purchased the Products in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed June 13, 2024 at San Diego, California.

CROSNER LEGAL, P.C.

By:    /s/ *Michael T. Houchin*
        MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

CLASS ACTION COMPLAINT